John Carrell 224260
Utah State Prison
P.O. Box 250
Draper, UT 84020

FILED
U.S. DISTRICT COURT

2018 AUG 28 A 11: 17   RECEIVED CLERK

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

AUG 21 2018

U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| JOHN CARRELL | CIVIL RIGHTS COMPLAINT AND DEMAND FOR JURY TRIAL PERSUANT TO 42 USC 1983 |
|---|---|
| Plaintiff, Pro Se | |
| v. | Case: 2:18-cv-00654 |
| Officer Jordan Kearl, Sergeant Gomez, Captain Maryann Reding, Captain Phelps, Warden Larry Benzon, Lucy Ramirez, Lt. Allan Howard and/or Captain Ray, Captain J. Beers, Captain Rick Brown, Captain Victor Smith and 10 John Doe's | Assigned To : Campbell, Tena<br>Assign. Date : 8/21/2018<br>Description: Carrell v Kearl et al |
| Defendants | |

A. JURISDICTION

1. USCA 1985 AND USCA 42 1983

B. PARTIES

1. Plaintiff, John Carrell (Plaintiff)

2. Plaintiff, John Carrell resides in Salt Lake County, state of Utah

3. Defendants

a.) Officer Kearl, Corrections Officer, Utah State Prison

b.) Sergeant Gomez, Corrections/Shift Sergeant, Baker Block, Utah State Prison

c.) Captain Maryann Reding, Correction/IDHO Officer, Utah State Prison

d.) Captain Phelps, Corrections/Visiting Officer, Utah State Prison

e.) Warden Larry Benzon, Warden, Utah State Prison

1

f.) Program Manager, Lucy Ramirez, Hearing Office, Utah State Prison

g.) Captain Ray, Corrections/Commander, Dog Block, Utah State Prison

h.) Lt. Allan Howard, Correction/Assistant Commander, Dog Block Utah State Prison

i.) Captain J. Beers, Corrections/Shift Commander, Wasatch, Utah State Prison

j.) Captain Rick Brown, Corrections/IDHO Officer, Utah State Prison

k.) Captain Victor Smith, Corrections/Visiting Officer, Utah State Prison

l.) John Does's 1-10

The true names and capacities of defendants, John Doe's, 1-10, whether individual, cooperate, associate or otherwise are as yet unidentified and unascertained by plaintiff who, therefore sues said defendants by such fictitious names and will ask leave to amend this complaint to show these defendant's true names and capacities when the same have been identified and ascertained.

m.) All defendants acted under color of law in committing the acts complained of herein.

C. NATURE OF THE CASE

1. This action arises from the custodial misconduct of Department of Correction's Employees. Denying or not insuring availability of the alternative intoxicant/controlled substance test and the disregard of finding the "truth of the matter under consideration" ignores the Plaintiff's "immutable trait" of infrequent urination and discriminats against the Plaintiff by treating him differently than other prisoners who could produce a urine sample within the confines of the policy, thus denying the Plaintiff the right to prove he was not using intoxicants or illegal controlled substances at the time. These actions or omissions to act jeopardize the Plaintiff's liberty interests.

2. When the Plaintiff physically could not urinate according to the urine collection policy FE 21, he requested an alternative, intoxicant/controlled substance test in good faith knowing he had nothing to hide.

3. The Plaintiff was denied the alternative test on 2 occasions which resulted in 2 failures to produce a urine sample and caused the two IDHO A 13 guilty findings.

4. The punishment for an A 13 guilty finding and the "collateral consequences" which is nothing more than additional punishment is very severe and is increased excessively for subsequent guilty findings.

2

5. There is no distinction made between failure to produce a urine sample and being found with intoxicants/controlled substances in one's body. Both are recorded on the "Offender Discipline History Listing" as a major class write up guilty finding and described only as intoxicants/controlled substance.
6. The Board of Pardons and Parole look at and consider disciplinary actions of inmates when considering parole. These guilty findings jeopardize the Plaintiff's ability to qualify for parole. As such, the Plaintiff is entitled to the same due process rights during his disciplinary hearings as he would enjoy in a court of law. The Petitioner is entitled to be tried by the legal standard by which "guilt" must be proven beyond a reasonable doubt. Instead, Petitioner was found guilty and his opportunity to qualify for parole was threatened by disciplinary findings of guilt which were surmised by the lowest legal standard of only "some evidence".
7. The Plaintiff has done everything within his power to cooperate fully with staff and policy. The times the Plaintiff physically could not produce a urine sample and was granted the alternative test, he passed with no problem. This entire issue has risen from the discriminatory practice of denying the alternative test when requested, solely at the whim of the officer in control at the time.
8. The Plaintiff also made every effort to truthfully explain his situation to the IDHO officers who are supposed to be fair and determine the "truth of the matter under consideration" according to FD01/04.02C2. This did not happen.
9. The Plaintiff also made every effort to explain his situation in the appeals process which is supposed to insure policy compliance of IDHO officers. This also did not happen because the circumstances surrounding the incident were not considered. Instead, the IDHO officers and appeals staff chose an attitude of impunity in their mistreatment of the Plaintiff. The IDHO officers and appeals staff chose to apply their unwritten/unspoken code of "back the cop" and "one size fits all punishment" which is so prevalent in this institution. This tends to confirm Sixth District Court Judge, Wallace Lee's, assessment of the Department of Corrections being "sneaky" and "deceitful".
10. The above listed officers of the Utah Department of Corrections have ignored the Plaintiff's immutable trait of infrequent urination and taken unfair advantage of the vaguely-worded policy governing administration of alternative, intoxicant/controlled substance tests as described in FE21/03.00 through FE21/03.05. As a result, Plaintiff's

3

constitutional right of equal treatment and due process has been violated and his liberty interest in qualifying for parole has been threatened.

11. And finally, it is just wrong for the Department of Corrections to abuse the, almost unlimited authority they have over the Plaintiff and punish him severely for the inability he has to meet their policy, which is discriminatory to him and those like himself who cannot always urinate on demand.

D. CAUSE OF ACTION


Cause 3
2018

1. Plaintiff's fourteenth amendment, of the Constitution of the United States, right of equal treatment under the law was violated by Officer Jordan Kearl on July 13, 2016 when Officer Kearl denied Plaintiff's request for an alternative intoxicant/controlled substance test. Plaintiff made every effort to comply with Officer Kearl's order to produce a urine sample. When Plaintiff knew he could not produce a urine sample in the required time, Plaintiff requested an alternative test. By denying the alternative test, Officer Kearl denied Plaintiff the opportunity to prove he had no intoxicants or controlled substances in his body and discriminated against Plaintiff because of his inability to urinate according to Department of Correction's Policy, FE21.

2. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Officer Sergeant Gomez on July 13, 2016 when he denied Plaintiff's request for an alternative intoxicant/controlled substance test. Plaintiff made every effort to comply with policy to produce a urine sample. When Plaintiff knew he could not produce a urine sample in the required time, Plaintiff requested an alternative test. By denying the alternative test, Officer Sergeant Gomez denied the Plaintiff the opportunity to prove he had no intoxicant or controlled substances in his body and discriminated against Plaintiff because of his inability to urinate according to Department of Correction's Policy, FE21.

3. Plaintiff's fourteenth amendment rights of due process and of equal treatment under the law were violated by Captain Maryann Reding on August 30, 2016 when Maryann Reding chose not to recognize that Plaintiff had requested alternative testing methods and chose not to believe his written statement in which Plaintiff explained his failure to produce a urine sample within the constricts of the policy as a physical inability rather than a behavior.

4

4. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Captain Phelps on or about October 2, 2016 when Captain Phelps was informed that Plaintiff's failure to produce a urine sample was the result of a body function and not a behavior. Captain Phelps chose to punish Plaintiff with a four month barrier visit restriction for a physical inability not a behavior, thereby discriminating against Plaintiff because he could not physically urinate according to policy after being denied the alternative testing method.
5. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by, then, Deputy Warden Larry Benzon on or about November 11, 2016 when after being informed, by Plaintiff's letter, that punishment was being administered because of an inability rather than a behavior. No action was taken to remedy the situation.
6. Plaintiff's fourteenth amendment rights of due process and of equal treatment under the law were violated by Lucy Ramirez, Program Manager, Hearing Office on or about September 27, 2016. After she was informed in Plaintiff's appeal to Captain Maryann Reding's finding that the Plaintiff's failure to produce a urine sample according to policy was due to a physical inability rather than a changeable behavior. Ms. Ramirez chose to uphold Captain Reding's finding and allowed the punishment to continue. This discriminates against the Plaintiff and others who physically cannot urinate according to policy.
7. Plaintiff's fourteenth amendment rights of due process and of equal treatment under the law were violated by Lucy Ramirez, Program Manager, Hearing Office, on or about October 11, 2016. After she was informed by Plaintiff's appeal to Captain Phelps' decision to impose the visiting restriction of 4 months for Plaintiff's failure to produce a urine sample according to policy despite being due to a physical inability rather than a changeable behavior, Ms. Ramirez chose to uphold Captain Phelps' decision. This discriminated against the Plaintiff's and others who cannot physically urinate according to policy.
8. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Lt. Allan Howard and/or Captain Dallas Ray on or about October 30, 2017 when Plaintiff was targeted and moved to Oquirrh 2 in retaliation for his persistence in trying to exercise his constitutional right in defending himself in a court of law.
9. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Lt. Allan Howard and/or Captain Dallas Ray on or about November 6, 2017 when, after

being moved back to Wasatch, Dog Block, Plaintiff was targeted and put on a "fast track" for intoxicant/controlled substances urinalysis test. This was done with the knowledge of Plaintiff's difficulties in producing a urine sample within constricts of FE21 policy. This action was taken to send a clear message to Plaintiff of just how hard staff could make his life if Plaintiff persisted with his requests and efforts to get what he needed to defend himself in court and to act as his own council.

10. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Captain J. Bears on December 3, 2017 when he denied Plaintiff's request for an alternative intoxicant/controlled substances test made through Sergeant White. By denying the alternative test, Captain Bears denied the Plaintiff the opportunity to prove he had no intoxicants or controlled substances in his body and discriminated against the Plaintiff because of his inability to urinate according Department of Correction's policy FE21.

11. Plaintiff's fourteenth amendment rights of due process and of equal treatment under the law were violated by Captain Rick Brown on or about December 21, 2017 when, after Plaintiff testified to Captain Brown that Plaintiff had an inability rather than a behavior or discipline problem and that Plaintiff had requested, but had been denied the alternative test. Captain Brown chose to find Plaintiff guilty of an A13 charge which punished him for a physical inability.

12. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Captain Victor Smith between January 22 and March 21, 2018 when after being informed by both Plaintiff and Plaintiff's wife that Plaintiff was being punished for an inability, Captain Smith ignored the fact that Plaintiff's failure to produce a urine sample was an inability rather than a behavior as evidenced by the Plaintiff's request for the alternative intoxicant/controlled substance test which was denied. Captain Smith chose to continue the imposed one year barrier visit punishment.

13. Plaintiff's fourteenth amendment rights of due process and of equal treatment under the law were violated by Lucy Ramariz on or about February 8, 2018 when, after being informed by Plaintiff's appeal of January 15, 2018 that Plaintiff's failure to produce a urine sample was a physical inability rather than a behavior or disciplinary problem. She ignored disciplinary policy FD 01/04.02C2. That policy states "evidence shall be intended to ascertain the truth of the matter under consideration." She chose to uphold Captain Brown's finding which is discriminatory to the Plaintiff because of an inability.

6

14. Plaintiff's fourteenth amendment right of equal treatment under the law was violated by Warden Larry Benzon on or about April 17, 2018 when after being informed by a letter written by the Plaintiff making Warden Benzon aware of Plaintiff's condition and situation. Warden Benzon chose to take no action to correct the discriminatory practice. Warden Benzon's omission to act and choices to totally ignore Plaintiff's sincere attempts to bring to right and stop the discriminatory practice over the last year demonstrates Warden Benzon's total disregard for basic rights of those in his care and allows this discrimination to continue.
15. In April 2018, after applying for an open position at Reading for the Blind, Plaintiff was denied employment by John Doe #1 after explaining to Officer Halliday, during the interview, that Plaintiff had not been allowed the alternative intoxicant/controlled substance test.
16. Warden Larry Benzon was guilty of malfeasance when after being notified of a discriminatory policy and practice by Plaintiff's letter of April 17, 2018, took no action to correct the problem. His failure to act or even communicate with Plaintiff regarding his legitimate concerns demonstrates Warden Benzon's disregard of basic human rights.

E. INJURY

1. There are different categories of injury the Plaintiff has suffered because of the actions or omissions to act by the Defendants listed above.
2. There are those things which are easy to see and place a value on, such as the monetary fines of $150.00 and $125.00 assessed by the IDHO officers.
3. There is the disqualification for employment which could be calculated and estimated on the assumption the Plaintiff had been hired for the job at Reading For the Blind were it not for the A-13 write up.
4. Then there are things which are harder on which to place a monetary value, like the mental torment, stress and worry about being selected for another drug test and the possibility of Plaintiff not being allowed the alternative test if he is not able to produce a urine sample.
5. There is the physical torture of excessive intakes of water Plaintiff had to put himself through for the intoxicant/controlled substance tests of February 9, 2018 and March 18, 2018.

6. The feeling of hopelessness and despair of being punished for something that is totally out of Plaintiff's control.
7. The greatest injury to Plaintiff was brought about by the "collateral consequence" of the barrier visit restriction. This injury is both psychological and emotional because it denied Plaintiff the privilege of holding hands with his wife during visits and a brief hug and kiss from his wife at the beginning and end of visiting sessions. This is invaluable to Plaintiff because it is the only semblance of being able to maintain a very small part of an intimate, marital relationship and actually feel and be treated like a real human being rather than a piece of trash or an animal to be herded. There is no amount of money that can make up for this shred of human normalcy.

F. PREVIOUS LAW SUITS

1. There are no previous law suits that Plaintiff has been a party to or involved with in any way, which included or relied on any of the facts, events or circumstances associated with this case.
2. Plaintiff has previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of herein to no avail.

G. PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief against Defendants.
1. For monetary amount proven at trial.
2. For special damages in an amount proven at trial.
3. For punitive damages in kind to be defined, requested and justified to the jury.
4. For injunctive relief as to the Department of Corrections to implement policy and carry out such policy to protect the rights of Plaintiff and others similarly situated, to include:
   a. Implement new or change existing urine collection policy to insure alternative testing method are made available upon request of the inmates and not left to officer discretion

b. Implement new or change existing urine collection policy to eliminate the requirement to produce a urine sample in addition to being allowed the alternative test.
   c. Implement new or change existing policy to distinguish how an A-13 guilty finding is reported on the "offender discipline history listing", and to differentiate between a failure to produce a urine sample and finding intoxicants/controlled substances in one's body.
   d. Remove the two A-13 guilty findings from Plaintiff's "offender discipline history listing" and all other records or systems, such as "O Track" in order to reflect and restore Plaintiff's actual behavior instead of his disability.

   ※ e. See below

5. For injunctive relief as to the Utah Department of Corrections to prohibit retaliation against the Plaintiff for filing this action to include:
   a. Unrequested housing changes.
   b. Loss or reduction of privilege levels.
   c. Reduction of lock- down levels.
   d. Loss or reduction of any other clearances.
   e. Increase of intoxicant/controlled substance tests.
   f. Increased cell inspections/shake-downs.
6. For costs and expenses incurred in these proceedings.
7. For interest on all special damages.
8. For such and other further relief as this court may deem just and proper under the circumstances.

Respectfully submitted,

8/14/2018
Date

John Carrell

※ e. ImpLemeNT New or chaNge existiNg poLicy To Require sTAff To AckNowLedge ANd provide To iNmATe wriTTeN Proof of GriveNces sobmiTTed AT The Time of sobmiTTAL

State of Utah
§
County of Salt Lake
On this day 14 of Aug, in the year 2018, before me
Jaime Jensen, a notary public, personally appeared
John Carrell, proved on the basis of satisfactory evidence to be the person(s) whose name(s) (is/are) subscribed to in this document, and acknowledged (he/she/they) executed the same.
(Notary Seal)
Notary Signature

NOTARY PUBLIC
JAIME JENSEN
684026
MY COMMISSION EXPIRES
JULY 17, 2019
STATE OF UTAH

9

# DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained therein is true and correct, and filed according to 28 U.S.C. Sec. 1976 and 18 U.S.C. Sec. 1621.

EXECUTED at 25th on July, 2018.

Plaintiff John Carrell

State of Utah
§
County of Salt Lake
On this day 25th of July, in the year 2018, before me Jaime Jensen, a notary public, personally appeared John Carrell, proved on the basis of satisfactory evidence to be the person(s) whose name(s) (is/are) subscribed to in this document, and acknowledged (he/she/they) executed the same.
(Notary Seal)
Notary Signature

NOTARY PUBLIC
JAIME JENSEN
684026
MY COMMISSION EXPIRES
JULY 17, 2019
STATE OF UTAH

8