*+\

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN CARRELL,<br><br>                  Plaintiff,<br><br>vs.<br><br>JORDAN KEARL ET AL.,<br><br>                  Defendants. | **MEMORANDUM DECISION &<br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Case No. 2:18-CV-654 TC<br><br>District Judge Tena Campbell |

       Plaintiff, John Carrell, a Utah State Prison (USP) inmate, filed this *pro se* civil case, proceeding *in forma pauperis*. (ECF Nos. 2, 3.) In his verified complaint, under 42 U.S.C.S. § 1983 (2020),[1] he requests injunctive relief and damages. (ECF No. 3, at 8-9)

       Plaintiff names as defendants USP employees Beers, Brown, Gomez, Howard, Kearl, Phelps, Ramirez, Ray, Reding, and Smith. (*Id.* at 1.) Plaintiff asserts federal constitutional claims of (a) equal-protection and due-process violations regarding Plaintiff's failure to provide urine

---

[1]Section 1983 reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.S. § 1983 (2020).

samples for drug tests, and (b) First Amendment violations regarding alleged retaliation against Plaintiff for pursuing legal actions. (ECF No. 3.)[2]

As ordered, Defendants filed *Martinez* report (MR),[3] which included at least twenty-seven exhibits, with declarations, jail policies and records, and grievance copies, (ECF No. 75, 76, 79, 80), and summary-judgment motion (SJM), (ECF No. 81). Plaintiff responded with argument, notes, declarations, and prison records. (ECF Nos. 82, 83, 86.) Defendants replied. (ECF No. 90.)

## I. SUMMARY-JUDGMENT STANDARD

An important word at this section's start: Defendants are not to be lumped together as a group, but should be treated as individuals, each with the defendant's own claim(s) against the defendant, based on the defendant's own behavior. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (stating, because § 1983 is "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in

---

[2]At various points in his SJM response, Plaintiff stated, "All of the Defendants knew or should have known they were not complying with USP policy," (ECF No. 83, at 12); and, "Plaintiff . . . has never claimed 'the right to an alternative drug test' was a constitutional right, but rather USP policy intends for their use for just such a condition as the Plaintiff has an 'immutable trait of infrequent urination,'" (*id.* at 13). However, to clarify, Plaintiff's allegations that Defendants violated USP policy do not support a cause of action under § 1983, which seeks only to remedy failure to comply with federal law.

[3]*See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained MR's function, saying:

> Under the *Martinez* procedure, the . . . judge . . . will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

lawsuits involving multiple defendants"); *Robbins v. Okla. ex rel. Dept' of Human Servs.*, 519

F.3d 1242, 1250 (10th Cir. 2008) (stating complaint must "make clear exactly *who* is alleged to

have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims

against him . . . as distinguished from collective allegations") (emphasis in original) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)); *Tonkovich v. Kan. Bd. of Regents*, 159

F.3d 504, 532-33 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims

was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple

defendants--"despite the fact that each of the defendants had different powers and duties and

took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions

taken by particular defendants that could form the basis of [a constitutional] claim").

That said, this Court shall grant summary judgment when "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A party may support factual assertions by "citing to particular parts

of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials." *Id*. at 56(c)(1). Summary judgment's

purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24 (1986).

The movant has the "initial burden to demonstrate an absence of evidence to support an

essential element of the non-movant's case." *Johnson v. City of Bountiful*, 996 F. Supp. 1100,

1102 (D. Utah 1998). Once movant meets this burden, it "then shifts to the non-movant to make

a showing sufficient to establish that there is a genuine issue of material fact regarding the

existence of that element." *Id*. To do so, the non-movant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1999) (citation omitted). In a summary-judgment ruling, this Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

Plaintiff was specifically notified by the Court of his burden on summary-judgment:

> [W]hen Defendants move for summary judgment, Plaintiff may not rest upon the mere allegations in the complaint. Instead, as required by Federal Rule of Civil Procedure 56(e), to survive a motion for summary judgment Plaintiff must allege specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

(ECF No. 63, at 2.) Plaintiff was also given the full texts of Federal Rule of Civil Procedure 56, (*id*. at 4), and District of Utah Local Rule 56-1, (*id*. at 5-6).

## II. CLAIMS AGAINST DEFENDANT RAMIREZ

Plaintiff contends Defendant Ramirez violated his due-process and equal-protection rights by denying his appeals of other defendants' disciplinary decisions that (a) Plaintiff was guilty of failing to produce urine samples for drug tests and (b) meted punishment. (ECF No. 3, at 5-6.) The Court accepts as true Plaintiff's allegations that Defendant Ramirez denied his appeals of other defendants' disciplinary decisions that Plaintiff was guilty of failing to produce a urine sample for drug tests and thus must face punishment.

The Tenth Circuit has noted, "[T]here is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443

F. App'x 331, 332 (10th Cir. 2011) (citations omitted). And, "[b]ecause [Plaintiff]'s only

allegations involving th[is] defendant[] relate to the denial of his grievances [or appeals], he has

not adequately alleged any factual basis to support an 'affirmative link' between th[is]

defendant[] and any alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069

(10th Cir. 2009) (citations omitted). The Court thus dismisses claims against Defendant Ramirez.

### III. CLAIMS AGAINST DEFENDANTS BEERS, BROWN, GOMEZ, KEARL, PHELPS, REDING, AND SMITH

Based on qualified immunity (QI), Defendants Beers, Brown, Gomez, Kearl, Phelps,

Reding and Smith bring SJM on Plaintiff's due-process and equal-protection claims as to their

individual actions requiring Plaintiff to produce urine samples for drug tests, denying him

alternative tests, or holding Plaintiff guilty of not producing urine samples for drug tests, with

punishment. The Court accepts as true here Plaintiff's allegations that these defendants required

Plaintiff to produce urine samples for tests, denied him alternative tests, and held Plaintiff guilty

of not producing urine samples, with punishment.

### A. QI STANDARD

"The doctrine of [QI] protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[QI] balances two important interests--[1] the need to hold public officials accountable when they exercise power irresponsibly and [2] the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The purpose of the doctrine is to provide government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

5

> "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted). When a defendant raises the [QI] defense, the plaintiff must therefore establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Under this two-part test, "immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

*Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020).

> The test imposes a "heavy two-part burden." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007) (internal quotation marks omitted). If the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant [QI]. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The court has discretion to decide which of the two prongs of the [QI] analysis to address first. *See Pearson*, 555 U.S. at 236. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for [SJ]...." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

*Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018); *see also Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) ("Only if plaintiff makes that threshold showing does the burden shift to defendants to show that no material facts remain in dispute that would defeat defendant's claim of [QI].") (citing *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992)).

The Court focuses on prong two of the QI analysis, which is Plaintiff's failure to carry his burden to show his rights were "clearly established at the time of the defendant[s'] conduct." *Ullery*, 949 F.3d at 1289.

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308

6

> (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658,
> 664 (2012)). "To be clearly established, a legal principle must have
> a sufficiently clear foundation in then-existing precedent." *Wesby*,
> 138 S. Ct. at 589. "The dispositive question is 'whether the
> violative nature of the *particular* conduct is clearly established.'"
> *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742).
> Accordingly, the Supreme Court has repeatedly admonished circuit
> courts "not to define clearly established law at a high level of
> generality." *Kisela*, 138 S. Ct. at 1152. Though "a case directly on
> point" is not required, "existing precedent must have placed the
> constitutional question regarding the illegality of the defendant's
> conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239
> (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct.
> 81 (2019).
>
>     "Ordinarily . . . there must be a Supreme Court or Tenth Circuit
> decision on point, or the clearly established weight of authority
> from other [circuits] must have found the law to be as the plaintiff
> maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012)
> (internal quotation marks omitted).
>     . . . .
>     [W]e decline to consider district court opinions in evaluating
> the legal landscape for purposes of qualified immunity.

*Ullery*, 949 F.3d at 1291, 1300 (other citations omitted); *see also Watson*, 75 F.3d at 577 (stating

burden "quite heavy" because "plaintiff must do more than simply allege the violation of a

general legal precept [and] . . . must 'instead demonstrate a substantial correspondence between

the conduct in question and prior law allegedly establishing that the defendant's actions were

clearly prohibited'") (ellipses in original) (citations omitted).

    The QI analysis "may appear unduly formalistic . . . [b]ut this is the task required of

[courts] under the [QI] precedents [courts] are obligated to follow." *Ullery*, 949 F.3d at 1301.

## B. APPLYING QI STANDARD

    Having thoroughly reviewed Plaintiff's response to Defendants' assertion of QI--in which

Plaintiff acknowledges controlling standards and includes legal citations, (ECF No. 83, at 10-

14)--the Court sees Plaintiff argued and analyzed, under QI prong one, that his constitutional

rights were breached. But Plaintiff has not met his burden, under QI prong two, to show his "right was clearly established at the time of the defendant[s'] conduct." *Ullery*, 949 F.3d at 1289.

Plaintiff cites no cases at all like the factual scenario here--i.e., involving claims successfully asserting breach of due-process and equal-protection rights, in which a plaintiff alleges he could not provide a urine sample, was not given an alternative test, and on that basis was found guilty of a disciplinary violation and punished accordingly.[4] Plaintiff has not even suggested there is clearly established law that would have put defendants on notice that their actions could have violated Plaintiff's constitutional rights. Plaintiff therefore has not carried his QI burden, resulting in dismissal of these claims and their related defendants: Beers, Brown, Gomez, Kearl, Phelps, Reding and Smith.

## IV. CLAIMS AGAINST DEFENDANTS HOWARD AND RAY

Plaintiff asserts Defendants Howard and Ray unconstitutionally retaliated against him. Specifically, he contends that, because he pursued his criminal defense, Howard and Ray moved him to other housing and put him on "fast track" for drug testing.

---

[4]Though it has no burden to do so, the Court (out of curiosity) searched for similar factual scenarios in scores of federal cases, from before March 2018 (the last time Defendants allegedly violated Plaintiff's rights under this section). (ECF No. 3, at 6.) The "first step in the clearly-established-law inquiry is to consider cases of controlling authority in this jurisdiction, which would settle the question." *Ullery*, 949 F.3d at 1292. The Court thus started by trying to find "Supreme Court and Tenth Circuit decisions that have addressed the asserted right." *Id*. None such case showed law governing a factual scenario similar to Defendants' behavior was clearly established as unconstitutional at the time of the behavior.

"In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions." *Id*. (citing *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)); *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). However, a gratuitous search of out-of-circuit law also revealed no applicable cases to support a conclusion that Defendants' behavior was unconstitutional.

Here, Defendants avow Plaintiff is foreclosed from merits consideration because he did not submit necessary grievances in USP's administrative process. Defendants have met their burden of showing that Plaintiff did not grieve his claims. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (stating prison defendants hold "burden of asserting and proving [Plaintiff] did not utilize administrative remedies"). Indeed, Defendants have submitted in their MR copies of all Plaintiff's grievances, none of which involve the claims against Howard and Ray. Still, Plaintiff argues he met grievance requirements. *See id.* ("Once a defendant proves that a plaintiff failed to exhaust, . . . the onus falls on the plaintiff to counter the exhaustion defense . . . .").

## A. EXHAUSTION REQUIREMENT

Under the Prison Litigation Reform Act of 1995 (PLRA),

> prisoners bringing suit under § 1983 must first exhaust available administrative remedies before seeking relief in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.") (quotations omitted). The Supreme Court has stressed, "we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirement[ ]." *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001).

*Griffin v. Romero*, 399 F. App'x 349, 351 (10th Cir. 2010) (unpublished).

## B. UNDISPUTED MATERIAL FACTS

• At relevant time, USP had grievance process for inmates to file complaints about conditions of confinement. (ECF Nos. 75-15; 80, at 5.)

• 10/30/17 - Plaintiff housed at USP when moved to Oquirrh 2 housing by Defendants Howard and Ray, allegedly retaliating against Plaintiff for pursuing criminal defense. (ECF No. 3, at 5.)

• 11/6/17 - Plaintiff housed at USP when placed on "fast track" for drug testing by Howard and Ray, allegedly retaliating against Plaintiff for pursuing criminal defense. (*Id*. at 5-6.)

• 8/21/19 - MR filed. (ECF No. 75-76.) All Plaintiff's grievances filed at USP, through 8/16/19, attached to MR. (Ramirez decl., ECF No. 80.) Grievances involved visiting incident, (ECF Nos. *id*.; Level One grievance, 76-10, at 5 (filed 7/3/17)), and chapel suspension, (Level One grievance, 76-10, at 10 (filed 4/2/18); Ramirez decl., ECF No. 80).

• 9/23/19 - Plaintiff's response to MR filed. (ECF No. 82.) Two grievance forms attached to response, involve "property request[s]," (Level One grievance, ECF No. 82-14 (filed 9/18/17); Level Two grievance, ECF No. 82-19 (filed 10/31/17)).[5]

• None of Plaintiff's grievances submitted by either party speak of "fast track" drug testing.

### C. PLAINTIFF'S REJOINDER TO DEFENDANTS' GRIEVANCE DEFENSE

Plaintiff argues he did grieve the retaliation issues, as shown by grievance documents he attached to his SJM response. However, those grievances are just to Level One and Two, not also Level Three, which USP grievance policy requires. (Ramirez decl., ECF No. 80, at 6-7.) And, Level One grievance is dated 9/18/17, before Plaintiff's housing location was changed on 10/30/17. (Level One grievance, ECF No. 82-14 (filed 9/18/17).) So Level One grievance necessarily does not mention the allegedly retaliatory housing change. It is true that Level Two grievance, filed 10/31/17, mentions the change and alleges the motive for the change was

---

[5]Other forms included with the response differ from grievances; they are disciplinary appeals. (ECF Nos. 82-6; 82-9; 82-10; 82-29, 82-30.)

retaliatory. (Level Two grievance, ECF No. 82-19 (filed 10/31/17).) However, Level Two

grievance could neither substitute for raising the issue at Level One, nor expand the scope of

Level One grievance. (Ramirez decl., ECF No. 80, at 6 ("By policy, the grieving inmate must go

through *each* level to exhaust the process and before seeking judicial relief. FDr02/03.02."); *id*.

("Under USP policy, the inmate has seven working days from the date of an incident or seven

working days from the time the inmate knew or should have known about a grievable incident, to

file a Level 1 grievance. FDr02/03.03. If the inmate does not timely file his grievance, he cannot

exhaust the administrative process.")); *cf. United States v. Krall*, 822 F.3d 808, 809-10 (10th Cir.

2020) (stating issue preserved for appeal only if lower court alerted to issue). Finally, Level One

and Two grievances do not have proof they were submitted to USP. Defendants did not attach

copies of these grievances to MR, which Defendant Ramirez swore attached "all of [Plaintiff's]

grievance records filed since he was incarcerated at USP." (ECF No. 80, at 5.) The documents as

submitted by Plaintiff lack authentication that they were ever part of USP's records.[6]

Any subjective belief by Plaintiff about how administrative remedies work is immaterial.

> "Section 1997e(a)['s] . . . requirements are clear: If administrative
> remedies are available, the prisoner must exhaust them." *Chelette
> v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000). "Congress intended to
> save courts from spending countless hours, educating themselves
> in every case, as to the vagaries of prison administrative processes,
> state or federal" and "did not intend for courts to expend scarce
> judicial resources examining how and by whom a prison's

---

[6] A notable point: Because the Court accepted as true Plaintiff's allegations against all Defendants, Plaintiff's arguments that he was handicapped by not having sealed documents and further discovery are irrelevant. And especially as to the exhaustion issue, by relying on copies of grievance documents (attached to his SJM response, with nothing more) that show only Levels One and Two, Plaintiff tacitly concedes that he did not (a) grieve to Level Three (except to invalidly assert that one of his disciplinary appeals--separate from the grievance process--could have served to exhaust his grievance regarding retaliation); (b) properly grieve his Level Two grievance by limiting its scope to the original subject matter of Level One; and (c) authenticate that his Level One and Two grievances were ever properly received by USP.

grievance procedure was implemented." *Concepcion v.
Morton,* 306 F.3d 1347, 1354 (3d Cir. 2002) (quotation omitted).

*Griffin*, 399 F. App'x at 351.

Before bringing suit as an inmate, Plaintiff was required to file grievances on all three levels required by USP policy, *Porter*, 534 U.S. at 532; but he did not. The Court lacks "discretion to dispense with administrative exhaustion" when the PLRA requires it. *Booth*, 532 U.S. at 739. That Plaintiff failed to exhaust is undisputed, as shown by the record.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that, based on (1) lack of affirmative link, (2) qualified immunity, and (3) lack of exhaustion, Defendants' summary-judgment motion is **GRANTED**. (ECF No. 81.) This action is **CLOSED**.

DATED this 30th day of November, 2020.

BY THE COURT:

JUDGE TENA CAMPBELL
United States District Court

12